May it please the Court, I'm Brian Sutherland for Petitioner Sandra Restrepo. Restrepo. Restrepo. Restrepo, yes. That's in the administrative record. You'll see it on her driver's license. I don't know why the caption is the way it is. Okay, we'll fix it. I'd like to reserve two minutes for rebuttal, if I could, please. Sure. The BIA erred as a matter of law in determining that Petitioner did not identify a particular social group. This Court has jurisdiction to identify that legal error and to remand to the BIA for optional reconsideration. As the Court said in Bonilla v. Lynch, the jurisdictional question is whether there is law to apply in reviewing a denial of a sua sponte reopening. Whether a group that a Petitioner identifies is a particular social group under the INA is a question of law, as the Court said in Perdomo v. Holder in 2010. So the BIA says, and it seems like the key question here, is that in the decisions below the IJ and the BIA assumed that she was a member of a particular social group and then said, but she hasn't established that the government was unable or unwilling to protect her. So the question is, why would it make any difference? And given that that was one of the key reasons of the BIA, isn't that dispositive? No, Your Honor. The question under Bonilla v. Lynch is whether the BIA relied on an incorrect legal premise in reaching its decision, and we think that it did for two reasons. First, it explicitly did say that it was relying on its determination about whether she was a member of a particular social group. But getting to the core of Your Honor's question and the second part is that the social group determination and the finding that the government was unwilling or unable to protect her are interconnected determinations. So you said that conclusorily in your brief, but you didn't explain why there's a difference between assuming she's a member of a PSG and finding she's a member of a PSG. I mean, that would be the bottom line question. Yes. The reason is that police unwillingness to protect depends on their perception that the domestic violence victim is a member of a social group that is entitled to less protection under Colombian law. And so with the BIA assuming that she was a member of a protected social group, you're saying there's a slight shade of difference between making that assumption and making the finding that that would affect the determination of unable and willing. Well, we're saying that it's more than a slight shade. We're saying it's, in fact, very difficult to make that assumption given how interconnected the two findings are. Again, I think the question is whether the police understood her to be a member of a group that was entitled to less protection, and given that they had that understanding, they didn't arrest Mr. Vaccaro after she reported the crimes of domestic violence, and immediately thereafter she left the country. And I'd like to offer an analogy, if I could. Is that a factual issue, though? I mean, we're bound by the prior Ninth Circuit decision that, in fact, she hadn't shown that the determination that the government wasn't unable or unwilling to protect her was supported by substantial evidence. So we're bound by that. That's law of the case. You are bound by that, and if the question before the Court was whether substantial evidence supports the BIA determination, then I would agree that we were done here. But under Bonilla v. Lynch, the question is whether the BIA relied on an incorrect legal question. And as to the alternative holding, which is that she hadn't established that the government was unable or unwilling to protect her, why is that wrong? It's not that it's wrong. It's that the BIA relied on an incorrect legal premise in reaching its conclusion. And I can't say more than to say that. Well, wait, let's go back just a second. Sure. So under Bonilla, we've said that we have some limited jurisdiction to look at a BIA decision denying discretionary or sua sponte reopening. Yes, Your Honor. And we've said we can only look at a legal or constitutional issue, right? Mm-hmm. So your argument here, as I understand it, is that she claims she's entitled to reopening sua sponte because there was a fundamental change in the law when the BIA recognized a social group of what was it? Was it El Salvadoran? Guatemala. Guatemalan women who had been in a long-term marital relationship, okay? Yes, Your Honor. And in this decision, the BIA said, well, that's not a fundamental change in the law. It's just incremental. So even if we have jurisdiction to look at that, tell me why the board's determination that this was just an incremental and they have their own case law, I think it's GD, where they define, where they have established a legal principle for applying fundamental change in the law. So tell me why, even if we, assuming we have jurisdiction, why they erred, why they didn't apply, misapplied the law. It seems like they did it right. Let me address that in two parts. The first point is, did the BIA err in determining if this change in the law was anything more than incremental? We rely on the work of scholars that we cited in our opening brief who have said that this ARCG opinion was a sea change in the law. And so when you had just matter of RA, that was the decision that denied asylum to a woman. But RA set the standard for when the BIA would recognize a fundamental change in the law. And they said if the change in law show or demonstrates that the applicant is entitled to relief, then that would be a fundamental change in the law. So how did they misapply that here, as Judge Akuta was? Their own law requiring a fundamental change in the law? Yeah. ARCG was the landmark decision that had been handed down since this Court's opinion in her case. This Court's opinion was January 2014. ARCG was August of 2014. Before ARCG, there was no opinion from the BIA recognizing that women who are subject to domestic violence in their home countries could constitute a cognizable social group. There simply was no precedent on that point. So it was a significant difference. But I want to resist the premise that I need to identify a fundamental sea change difference in the law. If you would suppose for a moment that the BIA just made an egregious error of law without any difference in the law, without any change, new precedent from either that body or this Court, this Court would still have jurisdiction to correct an error of law, whether or not. That's a little bit different than what you're arguing here. We have argued that there was a change in the law. That was the whole basis for your motion to reopen. There was a fundamental change in the law. Because otherwise it was much too late, right? So the motion to reopen was much too late. And so you had to ask the BIA to open sua sponte because of a fundamental change in the law. And so the question is, can we say that the BIA, in determining its own case law, was not a fundamental change? I think that's what Judge Baez is getting to. You can say that because the matter of ARCG is a fundamental change in the law. But more than that, Bonilla v. Lynch doesn't require a fundamental change of the law. It requires law to apply in order for the Court to have jurisdiction. And then the next question in Bonilla v. Lynch is whether the BIA relied on it. There is law to apply because they established their principle of what constitutes under their law, under the BIA's case law, a fundamental change in the law. And that was laid out in, what was it, ARC? No. What was it? GD. I can't keep all these. Yes. In re GD. I can't keep all these initials straight. There's pretty sound evidence in the record insofar as we appended unpublished decisions of the BIA in which, under similar circumstances, the BIA reached a contrary conclusion, one different than the one it reached here. The third decision that we attached to our opening brief on appeal in particular involves a woman from the Honduras. The Honduras has laws that prohibit domestic violence. It has the same sort of safe houses, but based on a finding that those laws were under-enforced in the Honduras, the BIA remanded that decision to the IJ. And it should have done the same thing here and, we submit, would have if it had made the correct determination about the particular social group. So GD, I guess, the standard is a change in law is sufficiently compelling that the extraordinary intervention of its sua sponte authority is warranted. I don't know that it gave a lot of detail to that. And given the vagueness of what constitutes a fundamental change, as opposed to merely incremental development, we're sort of in the Achimian situation, aren't we, where we don't really have a strict legal standard to grade whether the BIA was correct about its case law. If you were evaluating a discretionary determination, you would be in the Achimian situation. Which it is, right? Sua sponte reopening is discretionary, as we said, in the Achimian. Right. But the upshot of that analysis is that the BIA's reconsideration upon this Court's remand is entirely optional. I mean, the very purpose of Bonilla v. Lynch is to permit this Court to review BIA decisions on a motion to reopen after a discretionary determination that would otherwise be unreviewable so that the Court can evaluate questions of law. Your time is up, but I'll give you a minute for rebuttal. Thank you, Your Honor. May it please the Court. Amy Carmichael for the government. The petitioner in this case is essentially requesting that the Court focus on one issue to the exclusion of all others in order to create jurisdiction. Any exercise of jurisdiction in this case would be entirely academic because there are good reasons to deny the case on issues that are not reviewable. Bonilla created a limited exception to the jurisdictional rule that Achimian created, allowing the Court to review the decision solely for legal or constitutional errors. But even then, Bonilla states that this review is solely for the purpose of determining whether the Board's decision was premised on that legal error. The Board presented three separate reasons in this case to deny sua sponte reopening. The first was that the change in law was incremental, not a complete reversal. That is based on matter of GD, and matter of GD does not create jurisdiction for this Court to review that issue. The second is the particular social group merits that Petitioner focuses their argument on. And the third is that the Petitioner cannot succeed on this motion on the merits of the asylum application in any event based on the law of the case, that she didn't raise any arguments challenging the prior holding that the government was not unwilling or unable to control the persecution. So opposing counsel argues that the difference is that in the underlying decisions, the agency merely assumed that she was a member of a particular social group, whereas if they had found that she was a member under the reasoning in ARCG, that would make a difference in its unable, unwilling determination. Why is that wrong? Well, first of all, it's well established that these are independent reasons to deny an application. This Court routinely denies cases examining only one of these questions, not both of them, as does the Board. And there's no reason that they can't, that they have to analyze every single legal issue in order to deny a case where the Petitioner bears the burden of demonstrating that she meets every single qualification. The second is that this argument doesn't really make a lot of logical sense. The determination in her case turns on whether the government is able to protect her. That's a deeply factual question. She doesn't explain how that determination would be altered where none of the facts in her case have actually changed. This is a fact-driven analysis. There's been no change in the facts. So there's no reason to revisit that question. That's an independent basis on which the petition could just be denied outright for lack of jurisdiction. Correct. Correct. Correct. And, again, as a deeply fact-based question, that's a question that BNEA does not give you jurisdiction to review. So, I mean, in any event, that's the law of the case, and there's been no argument that there's been a sufficient change, either in the facts or in the law, on that point that wasn't raised to the Board. They haven't made those arguments here, that that law of the case would not be binding on this Court. Further, even looking at the area where they request you to take jurisdiction, the particular social group argument, this does not solve her problems. There's an independent reason to find no jurisdiction over that question, because she failed to exhaust the particular social group that she's raising now. In her briefing to the Board, the petitioner identified the group in two different ways. The first is women in a Latin American country where violence against women is common and not prosecuted, and who has experienced past persecution based on such sexual and domestic violence. In her briefing, she points to a separate passage where she identifies the group as Colombian women who fear violence at the hands of their domestic partner. So she raises the particular social group issue. Does she have to articulate it the same, exact same way before the BIA as she does on appeal in order to exhaust? In what case is that? So the particularity requirement is the issue that's at issue here. And I think the exhaustion is quite important. The court has applied exhaustion in other cases. But in particular, the particularity requirement gets Chevron deference. And here, it's the particularity issue that's different. The groups that she identified to the Board are basically just women, because the only way that she's narrowed that group is based on the persecution, but that's not permitted. Persecution is a separate issue. Here, the way that she has narrowed the group is based on women who are in a long-term relationship. She's making an attempt to make that particular social group closer to the social group that was in ARCG, where the group was defined as married women who could not leave their relationships. But again, although the legal framework is certainly reviewed as a legal question, the particular aspects of whether or not she's demonstrated that those are viewed as a group within society are factual questions. So the Board clearly here applied the correct... You're saying that she did or did not exhaust it by raising this issue to the BIA? She did not exhaust it, because the aspects of particularity that she's relying on here, that it's a long-term relationship that she cannot leave, that was not included in the briefing to the Board. And what's the case you're relying on that would help me see that? Well, just exhaustion principles in general. Okay, so there's no case directly on point that in, for example, the particular social group context that says you have to identify or articulate the particular social group you're a member of precisely before the BIA in order to exhaust that issue? Not that I have in front of me. Okay, thank you. And your point is that that difference means we don't have jurisdiction? Correct, because she has an obligation to exhaust her administrative remedies. But in any event, it's sort of irrelevant, because the Board separately found that she can't meet her burden on asylum based on the law of the case. So, again, any exercise in jurisdiction over that question would be entirely academic, because she ultimately still has to lose. If, you know, as I understood the heart of the claim was that in denying reopening, sui sponte reopening, she wasn't, given her social group that she had identified, the change in the law, recognizing Guatemalan women who've been in long-term relationships was a fundamental change in the law, which would under G.D. and the test that I thought the Board was applying, they seem to say that a fundamental change in law occurs when a woman is released by virtue of that particular change in the law. Now, that seems to be a standard that we could apply in determining whether or not they accurately applied their law. So isn't that correct? So wouldn't we have jurisdiction to determine that? But here it seems like they did apply their law. Well, first of all, ICMAN states that the Board's published decisions on sui sponte reopening do not create standards. They identify situations where the petitioner has not met the exceptional standard, but... Was G.D. a sui sponte reopen? It was a precedential decision. It was an en banc opinion by the Board. Seems to set a standard. It does not set a standard. It demonstrates only when... So it's a precedential opinion that has no precedent? Well, it's precedential for the Board, but it's not... But they have to apply their own law, right? It doesn't create a standard for this Court to review. The question is whether it's a sufficient change, and that's a... Why not? I mean, the Board creates a standard for a particularly serious crime, and then we look to see whether the Board made a mistake, whether there was an error made. The difference with sui sponte reopening, as ICMAN states, is that it's a determination that's left to the unfettered discretion of the Board. And in this case, when we're talking about this, whether it's a change in law, the question is really whether it's a sufficient change that the Board in its discretion determines that sui sponte reopening is warranted. But they've adopted a standard, a legal standard for evaluating when they will apply or exercise their sui sponte if there would even have been a change in the law, a fundamental change in the law. And they've given us, they've set forth a definition or a principle to apply. Again, it's based on whether that change is sufficient in the Board's view. And it's the in the Board's view part that you don't have the jurisdiction to review. But again, I think that it's ultimately not particularly relevant in this case, because there's not been any claim that she's demonstrated a change as to the law of the case. There's not been a change in law in that regard. There's not been a change in facts in that regard. The Court is bound by that determination. So for those reasons, the Court should dismiss the petition for review. Thank you. So what the government just said was that whether the government of Columbia can protect Mr. Strapel Perez is a deeply factual question. And that's the whole reason for the remand, actually, because of the interconnectedness of the determinations. And this is like asking first whether barn ball is a sport, deciding that it isn't, and then asking whether somebody is good at barn ball. The second question is difficult to answer if you've answered the first one in the negative. But if we assume that barn ball is a sport, I think we could answer the second question. Well, it's pretty hard to do when in the back of your mind you've already decided that it isn't. That's the fundamental point we're making. And as to the colloquy that Your Honor was just having with the government, sua sponte reopening is discretionary. That much is admitted. And it doesn't really matter why its decision is discretionary. It could be because the petitioner missed the statute of limitations, or it could be because the BIA decides that a fundamental change in the law hadn't occurred. That might render it discretionary also. But our point is this Court has jurisdiction to review even discretionary determinations of the BIA. And if it identifies a legal error that could have affected its determination on the merits, it can and should remand. And we respectfully request that this Court remand in this case. Thank you. Thank you, counsel. Thank you. We thank both counsel for their arguments this morning. We appreciate them. And matter is submitted at this time.
judges: Paez, Ikuta, Adelman